Docket No. _____

# In The
# United States Court Of Appeals
# For The Federal Circuit

## IN RE APPLE INC.,

### *Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the Eastern District of Texas
Case No. 6:12-cv-00943, Judge Leonard Davis

---

### PETITION FOR WRIT OF MANDAMUS

---

Bryan K. Anderson
SIDLEY AUSTIN LLP
1001 Page Mill Rd.
Palo Alto, California 94304
(650) 565-7000

Ryan C. Morris
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

July 30, 2014                    *Attorneys for Petitioner Apple Inc.*

# CERTIFICATE OF INTEREST

Counsel for Petitioner Apple Inc. certifies the following:

1.    The full name of every party represented by me is:

Apple Inc.

2.    The names of the real parties in interest represented by me are:

See response to number 1.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

Apple, Inc. discloses that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

4.    The names of all law firms, and the partners or associates, that appeared for the parties represented by me in the trial court or are expected to appear in this Court are:

Bryan K. Anderson
Ashish Nagdev
Sidley Austin LLP
1001 Page Mill Road, Bldg. 1
Palo Alto, CA 94304

Philip W. Woo
Kelly Krellner
Sidley Austin LLP
555 California Street, Suite 2000
San Francisco, CA 94104

Li Chen
Sidley Austin LLP
717 N Harwood
Suite 3400
Dallas, TX 75201

Roger Brian Craft

Eric Hugh Findlay
Findlay Craft PC
102 N College Avenue
Suite 900
Tyler, TX 75702

Ryan C. Morris
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

July 30, 2014

*/s/ Bryan K. Anderson*
Bryan K. Anderson
Sidley Austin LLP
1001 Page Mill Road, Bldg. 1
Palo Alto, CA 94304
(650) 565-7000
*Attorneys for Petitioner*
*Apple Inc.*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ......................................................................i

TABLE OF AUTHORITIES ........................................................................v

INTRODUCTION .........................................................................................1

RELIEF SOUGHT ........................................................................................4

ISSUE PRESENTED ....................................................................................4

JURISDICTIONAL STATEMENT ..............................................................4

STANDARD OF REVIEW ...........................................................................5

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................6

    A.    Plaintiff EON IP ..........................................................6

    B.    Apple ...........................................................................8

    C.    Procedural Posture of the Litigation ..........................9

REASONS FOR ISSUING THE WRIT ......................................................11

I.    THE PRIVATE INTEREST FACTORS OVERWHELMINGLY FAVOR TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA. ......................................................................12

    A.    "Access to Sources of Evidence" Weighs Significantly in Favor of Transfer. ........................................12

    B.    The "Availability of Compulsory Process" Strongly Favors Transfer. .......................................................16

    C.    "Witness Convenience" Overwhelmingly Favors Transfer. ...............18

    D.    No "Practical Problems" Weigh Against Transfer. ............................20

II.    THE PUBLIC INTEREST FACTORS ALSO FAVOR TRANSFER. ........25

    A.    The "Local Interest" Factor Favors Transfer. ....................................25

B.      "Court Congestion" Weighs in Favor of Transfer. ............................29

CONCLUSION ..................................................................................................30

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ............................................................13, 16, 22

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ...................................................14

*Aspex Eyewear, Inc. v. Zenni Optical LLC*,
  713 F.3d 1377 (Fed. Cir. 2013) .............................................................20

*Auto-Dimensions LLC v. Dessault Systèmes Solidworks Corp.*,
  No. 6:12-cv-01022-LED-JDL (E.D. Tex. Oct. 09, 2013) .................................21

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) ...................................................3, 23

*In re EMC Corp.*,
  677 F.3d 1351 (Fed. Cir. 2012) .......................................................3, 23

*EON Corp. IP Holdings, LLC v. Asustek Computer Inc.*,
  No. 6:12-cv-00944 (E.D. Tex.) ..............................................................8

*EON Corp. IP Holdings, LLC v. ASUSTeK Computer Inc.*,
  No. 6:12-cv-00944 (E.D. Tex. Mar. 28, 2014) ..................................10

*EON Corp. IP Holdings, LLC v. ASUSTeK Computer Inc.*,
  No. 6:12-cv-00944 (E.D. Tex. June 3, 2014) ...................................11

*EON Corp. IP Holdings, LLC v. ASUSTeK Computer Inc.*,
  No. 6:12-cv-00944 (E.D. Tex. June 4, 2014) ...................................11

*EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*,
  No. 1:13-CV-00910 (D. Del.), *on appeal*, No. 14-1392 (Fed. Cir.)....................8

*EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*,
  No. 3:11-CV-01555 (D.P.R.)...............................................................8, 20

*EON Corp. IP Holdings, LLC v. FLO TV Inc.*,
  No. 1:10-CV-00812 (D. Del.), *on appeal*, No. 14-1393 (Fed. Cir.)....................8

*EON Corp. IP Holdings, LLC v. Landis+Gyr Inc.*,
  No. 6:11-CV-00317-JDL (E.D. Tex.)...................................................7

*EON Corp. IP Holdings, LLC v. LG Elecs. MobileComm USA Inc.*,
  No. 6:12-CV-00941 (E.D. Tex.)......................................................7

*EON Corp. IP Holdings, LLC v. MetroPCS Commc'ns Inc.*,
  No. 2:12-CV-00633-JRG (E.D. Tex.) ...............................................7

*EON Corp. IP Holdings, LLC v. Pantech Wireless Inc.*,
  No. 6:12-CV-00942 (E.D. Tex.)......................................................7

*EON Corp. IP Holdings, LLC v. Sensus Metering Sys., Inc.*,
  No. 6:09-cv-116-LED-JDL (E.D. Tex.) ...........................................7

*EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*,
  No. 2:10-CV-00448, 2012 U.S. Dist. LEXIS 9545 (E.D. Tex. Jan. 9,
  2012) ...............................................................................13, 18, 19

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
  No. 3:12-CV-01011 (N.D. Cal.), *on appeal sub nom. EON Corp. IP
  Holdings, LLC v. Cisco Sys., Inc.*, No. 14-1496 (Fed. Cir.) ....................8, 20, 22

*EON Corp. IP Holdings, LLC v. Skyguard, LLC*,
  No. 6:11-cv-00015-LED-JDL (E.D. Tex.) ........................................7

*EON Corp. IP Holdings, LLC v. Verizon Clinton Center Drive Corp.*, No.
  6:08-cv-385-LED-JDL (E.D. Tex.) .................................................7

*EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
  No. 6:10-cv-379-LED-JDL (E.D. Tex.) ...........................................7

*GeoTag, Inc. v. Starbucks Corp.*,
  No. 2:10-CV-572, 2013 U.S. Dist. LEXIS 58575 (E.D. Tex. Jan. 14,
  2013) ..............................................................................14

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ..............................................*passim*

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)...............................................................27

*In re Hoffman-La Roche*,
    587 F.3d 1333 (Fed. Cir. 2009) .......................................................28

*Innovative Global Sys. LLC v. OnStar, LLC*,
    No. 6:10-CV-574, 2012 U.S. Dist. LEXIS 114504 (E.D. Tex. Feb. 14,
    2012) ...............................................................................................21

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011) ..............................................25, 26

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ..................................................1, 12

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
    No. 6:09-cv-390, 2010 U.S. Dist. LEXIS 104616 (E.D. Tex. Sept. 30,
    2010) ...............................................................................................13

*Patent Harbor, LLC v. Twentieth Century Fox Home Entm't, LLC*,
    No. 6:10-CV-607, 2012 U.S. Dist. LEXIS 73149 (E.D. Tex. May 25,
    2012) ...............................................................................................24

*PersonalWeb Techs., LLC v. Yahoo!, Inc.*,
    No. 6:12-cv-658, 2014 U.S. Dist. LEXIS 60952 (E.D. Tex. Feb. 12,
    2014) ...............................................................................................16

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
    No. 6:11-cv-655, 2013 U.S. Dist. LEXIS 46296 (E.D. Tex. Mar. 21,
    2013) ...............................................................................................17

*In re TOA*,
    543 F. App'x 1006 (Fed. Cir. 2013) .........................................18, 28

*In re TS Tech. United States Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ...........................................4, 5, 12

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010) .......................................................24

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...........................................5, 17, 18

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................5, 6, 17

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010) ......................................................21, 25, 26, 28

**Statutes**

28 U.S.C. § 1295 ...................................................................................................4

28 U.S.C. § 1331 ...................................................................................................4

28 U.S.C. § 1338(a) ..............................................................................................4

28 U.S.C. § 1404(a) ...........................................................................4, 5, 9, 22, 23

28 U.S.C. § 1407(a) ...........................................................................................23

35 U.S.C. § 299 ............................................................................................22, 23

**Rules**

Fed. R. Civ. P. 26(a)(1) ......................................................................................27

Fed. R. Civ. P. 45(c) ..........................................................................................17

Fed. R. Civ. P. 73 ...............................................................................................21

**Other Authorities**

*Judicial Emergencies*, http://www.uscourts.gov/JudgesAndJudgeships/
JudicialVacancies/JudicialEmergencies.aspx (last visited July 28, 2014) ............2, 3

Press Release, *President Obama Nominates Four to Serve on United States
District Courts* (June 26, 2014), http://www.whitehouse.gov/the-press-
office/2014/06/26/president-obama-nominates-four-serve-united-states-
district-courts ....................................................................................................30

# INTRODUCTION

Like other cases in which the Court has issued a writ of mandamus directing that a case be transferred to another venue, this case "features a stark contrast in relevance, convenience, and fairness between the two venues." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  The private convenience factors strongly favor transferring this case to the U.S. District Court for the Northern District of California ("NDCA"), where Petitioner Apple Inc. has been headquartered since 1976, and where the identifiable party witnesses, the vast majority of evidence, and even four of the identified third-party witnesses are located.  And the other private and public factors are either neutral or also favor transfer of this case to NDCA.

The U.S. District Court for the Eastern District of Texas ("EDTX"), on the other hand, offers no relevance, convenience, or fairness, and is the situs of this lawsuit solely because Respondent EON Corp. IP Holdings, LLC ("EON IP")—a non-practicing entity and subsidiary of Virginia-based EON Corporation, with owners and principals located in Monterrey, Mexico—chose to file suit there. EON IP's nominal principal place of business is in Tyler, Texas, but it has only a single employee there, and that employee has not even been identified as a potential witness on EON IP's initial disclosures, nor has EON IP given any indication that the employee has relevant information.  Moreover, because EON IP is a patent-assertion entity that does not make or sell any products, it has no technical,

sales, or marketing documents in Texas.  And EON IP has filed suits in NDCA, the District of Delaware, and the District of Puerto Rico, asserting several of the very patents-in-suit that are asserted against Apple here—further demonstrating that this case has no meaningful connection to EDTX.

In summarily adopting a magistrate judge's recommendation to deny transfer, the district court clearly erred, misapplied the law to the facts, and produced a patently erroneous result.  The court agreed that the private convenience factors favored transferring this case, but clearly erred in failing to give them the full weight they deserve.  Both access to sources of evidence and witness convenience, which is "'the single most important factor in transfer analysis,'" *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (citation omitted), strongly favor transfer of this lawsuit to NDCA.  The identifiable party witnesses, the vast majority of the evidence, and at last four of the identified third-party witnesses are all located in NDCA.  The court also clearly erred in failing to recognize the public interest benefit of transferring the case to NDCA, which has a true local interest in the dispute and is a more cost-effective venue for all involved.  And the district court further failed to recognize that its own congestion also favors transfer, particularly in light of the impending retirement of Chief Judge Davis, who presided in this case.[1]

---

[1] The Administrative Office of the Courts has already determined that the EDTX has two judicial emergencies created by the retirements of Judge Ward in 2011 and Judge Folsom in 2012.  *See Judicial Emergencies*, United States Courts,

However, the core error in the district court's analysis was concluding that judicial economy could trump all the other transfer considerations merely because the magistrate judge has construed some of the patents-in-suit previously. The mere fact that a magistrate judge has addressed a patent-in-suit before cannot be an ace in the hole. Such a rule would encourage plaintiffs to file in their favored jurisdiction against a defendant who cannot possibly transfer, and then use that prior experience to bind all future defendants to that jurisdiction. The district court plainly erred in adopting this view. And the error is particularly egregious in this case because judicial economy does not favor keeping the case in EDTX. Several other district courts around the country have construed some of the patents-in-suit, including NDCA, which has also considered the very products accused in this case.

The district court also touted the benefits of coordinating several of EON IP's current lawsuits in EDTX concerning the patents-in-suit, but that cannot be a basis to keep the case in EDTX because MDL procedures can accomplish all the necessary coordination between cases. *See In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012); *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (nonprecedential) (A329-332). Thus, judicial economy is either neutral, or favors transferring the case to NDCA.

---

http://www.uscourts.gov/JudgesAndJudgeships/JudicialVacancies/JudicialEmergencies.aspx (last visited July 28, 2014).

The only connection that EDTX has to this lawsuit is EON IP's tactical decision to file suit there.  Forum shopping of this nature should not be allowed; and it was a clear abuse of discretion for the district court not to stop it.

## RELIEF SOUGHT

Apple respectfully requests a writ of mandamus directing the U.S. District Court for the Eastern District of Texas to vacate the March 28, 2014 and July 21, 2014 orders denying Apple's motion to transfer venue, and compelling the court to transfer this case to the U.S. District Court for the Northern District of California.

## ISSUE PRESENTED

Did the district court clearly abuse its discretion by failing to transfer this case to NDCA under 28 U.S.C. § 1404(a) when the sole basis for venue in EDTX is EON IP's ephemeral and litigation-driven presence in the district, and when the evidence plainly shows that NDCA is a far more fair and convenient venue for the parties and witnesses?

## JURISDICTIONAL STATEMENT

The Federal Circuit has jurisdiction over this petition because the underlying action is a patent case.  *See* 28 U.S.C. § 1295; *Id.* §§ 1331, 1338(a).  Mandamus is available to correct a clear abuse of discretion.  *See In re TS Tech. United States Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008).  A court clearly abuses its discretion if it "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts," and if "such error[] pro-

duce[s] a patently erroneous result." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc) ("*Volkswagen II*") (citations and internal quotation marks omitted).

## STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …."[2]  28 U.S.C. § 1404(a); *see also In re Volkswagen AG*, 371 F.3d 201, 202 (5th Cir. 2004) (per curiam) ("*Volkswagen I*").  In reviewing a ruling on a § 1404(a) transfer motion, the Federal Circuit applies regional circuit law, here, the Fifth Circuit's.  *See TS Tech*, 551 F.3d at 1319.  In the Fifth Circuit, a district court must grant a transfer motion if the movant shows that the transferee venue is clearly more convenient than the transferor venue.  *See Volkswagen II*, 545 F.3d at 315.  In making this determination, the district court must assess and balance a number of private and public interest factors.  The private interest factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* (internal citation and quotation marks omitted).  The public interest factors include:

---

[2] It is undisputed that this case could have been brought in NDCA.  A29.

(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id*. (internal quotation marks omitted; alteration in original)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Plaintiff EON IP

EON IP is a subsidiary of EON Corporation, which has its U.S. offices in Herndon, Virginia.  A240; A240 (n.8); A214; A233 (¶ 5); A236-239.  EON IP was registered as an LLC in Texas on Friday, September 26, 2008.  A65 (¶ 30); A130-132.  EON Corporation granted EON IP a license to United States Patent No. 5,592,491 ("the '491 Patent") three days later.  A53-54 (citing *EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. 2:10-CV-00448); A214; A233 (¶ 5); A236-239.  On that same day, EON IP filed its first lawsuit.  A62 (¶ 8).  The license to the '491 Patent was executed by Alfonso Barragan in his capacity as president of Virginia-based EON Corporation and as manager of EON IP.  A53-54 (citing *EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. 2:10-CV-00448); A214; A233 (¶ 5); A236-239.  Mr. Barragan and the other manager of EON IP, Erick Haas, appear to reside in Monterrey, Mexico, not in EDTX.  A61 (¶ 2).  The license confirms that EON IP's address was that of its registered agent and litigation counsel in the first lawsuit, Potter Minton.  A53-54 (citing *EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. 2:10-CV-00448); A214; A233 (¶ 5); A236-239.

– 6 –

Of the three prosecuting attorneys of the patents-in-suit, two reside in NDCA, and the other on the East Coast.  A259 (§§ D.1.aa, D.1.z); A262-263; A275 (§§ D.10, D.11); A296-297 (§ D.ee); A304 (3 n.6); A62 (¶¶ 5-7); A67-81; A250 (¶¶ 1-2); A296 (§ D.dd); A67-84.  No identified witness resides in EDTX.

EON IP neither makes nor sells any products and, thus, has no technical, sales, or marketing documents.  By its own admission, EON IP has only one employee in Tyler, Texas.  A247 (¶ 3).  Notably, this employee remains unnamed, and does not appear anywhere on EON IP's identification of potential witnesses.  *Id.*; A291-297 (§ D).  Accordingly, EON IP is unlikely to have substantial, if any, relevant evidence, or even corporate or organizational documents, in EDTX.

EON IP's only business appears to be litigation; it has little, if any, connection to EDTX other than its choice to litigate repeatedly there.  To date, EON IP has initiated at least eight lawsuits in the Tyler Division of EDTX.[3]  EON IP also

---

[3] These cases include *EON Corp. IP Holdings, LLC v. Verizon Clinton Center Drive Corp.*, No. 6:08-cv-385-LED-JDL (A84; A107); *EON Corp. IP Holdings, LLC v. Sensus Metering Sys., Inc.*, No. 6:09-cv-116-LED-JDL; *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-cv-379-LED-JDL; *EON Corp. IP Holdings, LLC v. Skyguard, LLC*, No. 6:11-cv-00015-LED-JDL (A95; A117); *EON Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 6:11-CV-00317-JDL (A93; A115); *EON Corp. IP Holdings, LLC v. MetroPCS Commc'ns Inc.*, No. 2:12-CV-00633-JRG (E.D. Tex.) (assigned to Judge Gilstrap but settled about a month after the scheduling conference) (A103; A121); and three cases that were filed and coordinated with this case, namely, *EON Corp. IP Holdings, LLC v. LG Elecs. MobileComm USA Inc.*, No. 6:12-CV-00941-JDL (now dismissed) (A99; A109); *EON Corp. IP Holdings, LLC v. Pantech Wireless Inc.*, No. 6:12-CV-00942-JDL

has at least four actions that remain pending in other courts, including one appealed from NDCA to this Court, two appealed from Delaware to this Court, and one in Puerto Rico.[4]  Notably, many of the defendants in the actions filed outside of Tyler, Texas, have also been named as defendants in the lawsuits filed in Tyler, Texas.  EON IP's apparent forum shopping confirms that it has no meaningful connection to Texas.

## B.    Apple

Apple was founded in 1976 in Cupertino, California, which is within NDCA.  A133-135 (¶ 3).  Apple does not maintain any facilities or corporate offices in EDTX; the vast majority of the design and development, as well as sales and marketing, for the accused products have occurred outside EDTX, primarily at Apple's Northern District of California headquarters.  *Id.* (¶¶ 4-14).  At the time Apple moved for transfer, it employed approximately 13,850 people at its headquarters, including its management team.  *Id.* (¶¶ 3, 6).  Apple employees with substantial knowledge of those activities—including Jim Young (accused product, Apple

---

(A101; A111); and *EON Corp. IP Holdings, LLC v. ASUSTeK Computer Inc.*, No. 6:12-cv-00944-JDL (A97; A113).

[4] These cases include *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 3:12-CV-01011 (N.D. Cal.), *on appeal sub. nom. EON Corp. IP Holdings, LLC v. Cisco Sys., Inc.*, No. 14-1496 (Fed. Cir.) (A119); *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, No. 1:10-CV-00812 (D. Del.), *on appeal*, No. 14-1393 (Fed. Cir.) (A91; A105); *EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*, No. 1:13-CV-00910 (D. Del.), *on appeal*, No. 14-1392 (Fed. Cir.); and *EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*, No. 3:11-CV-01555 (D.P.R.) (A88; A123).

TV), Arun Mathias (accused product operating systems), Mark Buckley (financial records), and Thomas Alsina (accused product software), all of whom were identified in Apple's initial disclosures—work at or near Apple's headquarters in the Northern District of California.   A274 (§ D.3-6); A136-137 (¶¶ 4-6); A133-135 (¶¶ 3-12); *see also* A199 (¶ 4); A202 (¶¶ 3-6); A204 (¶ 4).   Most, if not all, of Apple's documents regarding those activities, including any technical documentation, marketing records, and business records related to product and service revenue, are stored at or near Apple's headquarters as well.  A134-135 (¶¶ 6-7, 10-14).

### C.    Procedural Posture of the Litigation

On December 19, 2012, EON IP filed this action against Apple, A4; A40, alleging infringement of the '491 Patent, as well as U.S. Patent Nos. 5,388,101 ("the '101 Patent"), 5,481,546 ("the '546 Patent"), and 5,663,757 ("the '757 Patent"). A40-52.   EON IP filed a similar suit against ASUS Computer International and ASUSTek Computer Inc. (collectively "ASUS"), asserting infringement of the same patents.

Because EON IP filed suit against Apple in a forum with no connection to the dispute, and in light of the clear evidence of greater convenience in NDCA, Apple filed a motion to transfer this action under § 1404(a) on April 3, 2013.  A6. Briefing was complete by June 3, 2013, delayed only by EON IP's requested extension to conduct venue-related discovery, which it ultimately did not pursue.

A6-7; A182.  On October 1, 2013, the parties exchanged initial disclosures.  A266; A267; *see also* A33.  On January 16, 2014, Apple and ASUS jointly filed a motion to stay the district court proceedings pending resolution of their motions to transfer.  A22.  EON IP's response and Apple and ASUS's reply were filed on February 3 and 11, respectively.  A22-23.  Almost a year after Apple filed its motion to transfer, Magistrate Judge Love denied it  on March 28, 2014.  A8; A27-38.  In analyzing the relevant private and public interest factors, the magistrate concluded "the convenience of the witnesses favor transfer, the relative ease of access to sources of proof slightly favors transfer, practical problems disfavor transfer, while the remaining factors are neutral."  A38.  Based on that, Magistrate Love denied Apple's motion.  On the same day, the magistrate denied ASUS's motion to transfer its case to NDCA.  *EON Corp. IP Holdings, LLC v. ASUSTeK Computer Inc.*, No. 6:12-cv-00944 (E.D. Tex. Mar. 28, 2014) (Mem. Opinion and Order).

On April 4, 2014, Apple filed objections with the district court and moved for reconsideration of the magistrate's order denying its transfer motion.  A8.  Briefing on Apple's objections concluded on May 2.  *Id.*  On May 29, Apple and EON IP jointly moved for a brief stay of the parties' pending deadlines in order to finalize an agreement in principle to resolve this matter.  *Id.*  On June 3, 2014, the district court, without substantive comment, denied ASUS's objections to the magistrate's denial of its transfer motion, simply adopting in full the magistrate's order.

*EON Corp. IP Holdings, LLC v. ASUSTeK Computer Inc.*, No. 6:12-cv-00944 (E.D. Tex. June 3, 2014) (Order Adopting Mem. Opinion and Order of United States Magistrate Judge).  The district court, on the very next day, transferred the entirety of EON IP's lawsuits against ASUS and Apple to Magistrate Love, indicating that Chief Judge Davis is no longer assigned to the case.  *See* Docket Entry, *EON Corp. IP Holdings, LLC v. ASUSTeK Computer Inc.*, No. 6:12-cv-00944 (E.D. Tex. June 4, 2014).  On June 16, Chief Judge Davis announced his impending retirement.  A307-308.

ASUS petitioned this Court for a writ of mandamus on July 3, 2014.  Pet. for Writ of Mandamus, *In re Asus Computer Int'l & ASUSTeK Computer Inc.*, No. 14-141 (Fed. Cir. July 3, 2014).  On July 11, the temporary stay of Apple's and EON IP's deadlines expired, and, on July 14, EON IP notified the court of the parties' inability to resolve this matter.  A8.  On July 21, the district court overruled Apple's objections to Magistrate Love's recommendation to deny Apple's transfer motion and adopted Magistrate Love's Memorandum Opinion and Order in full without substantive comment.  A39.

## REASONS FOR ISSUING THE WRIT

EON IP's claims against Apple do not have any meaningful connection to EDTX.  The events allegedly giving rise to this lawsuit did not occur in Texas, and there are few potentially relevant documents and no witnesses in Texas.  The ap-

propriate forum for this action is NDCA, where the Apple is located, where the events allegedly giving rise to this lawsuit occurred, where Apple's relevant documents and witnesses are located, where there is far greater local interest, and where it is more convenient for the parties to litigate. *See Nintendo Co.*, 589 F.3d at 1198 ("in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer") (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009)); *Genentech, Inc.*, 566 F.3d 1338; *TS Tech.*, 551 F.3d 1315). In refusing to transfer this case, the district court made clearly erroneous factual findings and produced a patently erroneous result by misapplying the facts to the governing standards.

## I.    THE PRIVATE INTEREST FACTORS OVERWHELMINGLY FAVOR TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA.

### A.    "Access to Sources of Evidence" Weighs Significantly in Favor of Transfer.

As this court has established, "'[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.'" *Genentech*, 566 F.3d at 1345. This case is no different, and the bulk of Apple's evidence is located in NDCA. A55-56; A134-135 (¶¶ 6, 11-12). Accordingly, the access-to-sources-of-evidence factor weighs heavily in favor of transfer. Indeed, this Court has previously recognized that the sheer volume of documents relevant to a patent lawsuit

in the defendant's possession in the transferee forum warrants transfer to that venue. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (issuing a writ of mandamus only a month before trial and instructing the district court to transfer venue to NDCA because, *inter alia*, the defendant was headquartered and had the majority of its documents and witnesses in that district).

The district court found that access to sources of proof only "slightly" favors transfer to NDCA, stating that the "'bulk…of EON's documents and evidence [are] located in Texas, including in the Eastern District … [where EON IP] stores corporate records, books, and papers.'" A30. This constituted clear error under the district court's own case law. The district court has already determined that EON IP's presence in EDTX is not comparable to a defendant's presence in the location where decisions and events giving rise to the case likely were made or occurred. *EON Corp. IP Holdings LLC v. Sensus USA, Inc.*, No. 2:10-CV-00448, 2012 U.S. Dist. LEXIS 9545 (E.D. Tex. Jan 9, 2012). The court thus erred in putting any weight on EON's documents in that district. The district court has already determined that "documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered." *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-cv-390, 2010 U.S. Dist. LEXIS 104616, at *12 (E.D. Tex. Sept. 30, 2010).

The district court further erred by merely suggesting without sufficient consideration that, even if EON IP had all of its documents in EDTX, and Apple had "most" of its relevant documents in NDCA, the relative volume of documents in EDTX was somewhat comparable to that in NDCA.  A30.  The court failed to account properly for the volume of documents in the two forums, which was inconsistent with the views of the same district court on the same issue.  *See Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 872-74 (E.D. Tex. 2013) (providing a thorough transfer analysis comparing the amount of evidence in the transferee forum with that in EDTX) (A309-317); *see also* A140 (¶ 7); A193-197; *GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-CV-572, 2013 U.S. Dist. LEXIS 58575, at *23-26 (E.D. Tex. Jan. 14, 2013) (nonprecedential) (making direct comparisons between the transferee forum and EDTX in its analysis) (A318-328).

Moreover, even if one assumed that *all* of EON IP's documents were in EDTX, the entirety of those documents would still be nominal in comparison to the volume of relevant documents in NDCA.  The facts surrounding the formation of EON IP suggest that it was created to serve as a serial plaintiff in numerous patent suits arising out of the '491 Patent and other patents assigned by EON Corporation. A53-54 (citing *EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. 2:10-CV-00448); A214; A233 (¶ 5); A236-239.  EON IP neither makes nor sells any products, and therefore has no technical, sales, or marketing documents.  A62 (¶ 4).

Because EON IP's sole business is licensing and litigating patents, A59, many of its documents will be undiscoverable, privileged communications. And even those that are discoverable are presumably organized and prepared for production because EON IP has been involved in litigation for its entire existence. Further, because EON IP's parent company, EON Corporation, is located in Herndon, Virginia, there are likely to be at least some relevant documents, including corporate or organizational documents in EON IP's possession, custody, or control located there. A53-54 (citing *EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. 2:10-CV-00448); A214; A233 (¶ 5); A236-239. In any event, since EON IP has only one employee in EDTX—an employee of so little significance that he or she does not even appear on EON IP's own disclosure of potential witnesses, A247 (¶ 3); A241-245—it is highly unlikely that a substantial amount of relevant evidence is maintained in Texas.

In contrast, Apple's research, design, marketing, and sales of the accused products, as well as its corporate operations, are centered in Apple's Cupertino, California, headquarters in NDCA. A55-56; A133-135 (¶¶ 3-14). Most, if not all, of Apple's documents relating to those functions are maintained at those headquarters. *Id.* Thus, the quantity of documents in EON IP's possession in EDTX is likely miniscule in number when compared to the vast volume of relevant documents in Apple's possession in NDCA. EON IP's assertion that it stores "corporate rec-

ords, books, and papers" in EDTX is therefore of little importance, and the district court erred in determining that this could in any way mitigate Apple's considerable evidence favoring transfer. *See Genentech*, 566 F.3d at 1345; *Acer Am.*, 626 F.3d at 1256; *see also PersonalWeb Techs., LLC v. Yahoo! Inc.*, 6:12-cv-658, 2014 U.S. Dist. LEXIS 60952, at *36-39 (E.D. Tex. Feb. 12, 2014) (even where the plaintiff maintains a substantial majority of its relevant documents in EDTX, this factor favored transfer because Apple was likely to have a larger volume of relevant documents).

The district court clearly erred in concluding that access to sources of evidence only "slightly" favored transfer to NDCA. Any correct analysis of this factor reveals that it weighs significantly in favor of transfer.

## B.    The "Availability of Compulsory Process" Strongly Favors Transfer.

Since four individual third-party witnesses are located within the "absolute subpoena power" of NDCA, with none in EDTX, the availability of compulsory process strongly favors transfer to NDCA. The record shows, for example, that two of the prosecuting attorneys of the patents-in-suit live in NDCA, as does a former EON Corporation president and an additional third-party identified by EON IP as knowledgeable about EON IP's business operations. A62 (¶¶ 5-8); A67-84; A241-245 (18, 20); A255-259 (§§ D.1.h, D.1.z, D.1.u, D.1.aa); A262-263; A140 (¶¶ 3-5); A168-180; A275-280 (§§ D.10-12, D.34); A292-297 (§§ D.e, D.p, D.dd,

D.ee); A62 (¶¶ 5-7); A67-81; A250 (¶¶ 1-2); A303-304 at 2, 3 n.6; A140 (¶¶3-5); A169-180.  The record also shows the presence of three relevant non-party companies/law firms in NDCA.  A241-245 (17-18); A254-257 (§§ D.1.p, D.1.d, D.1.f, D.1.g); A262-263 (2 & nn.3-5); A275-279 (§§ D.13-15, D.20, D.21, D.29); A304 (3 n.6).  Because EDTX lacks subpoena power over these individuals in NDCA, but NDCA *does* possess subpoena power, this factor favors transfer.  *See* Fed. R. Civ. P. 45(c); *Volkswagen II*, 545 F.3d at 316-17; *Volkswagen I*, 371 F.3d at 205, n.4.  Neither EON IP nor the district court identified a single witness for whom compulsory process is available in EDTX.

Instead, the court failed to address all but one of the witnesses within NDCA's subpoena power and then speculated whether that witness would be willing to attend trial.  A31.  The district court clearly erred by ignoring the witnesses within NDCA's subpoena power.  And it further erred in speculating about whether a witness would volunteer to travel to EDTX—the district court has previously recognized that parties should not be forced to plan for trial based on the whims of third-party witnesses.  *PersonalWeb Techs., LLC v. NEC Corp. of Am. Inc.*, No. 6:11-cv-655, 2013 U.S. Dist. LEXIS 46296, at *33 n.14 (E.D. Tex. Mar. 21, 2013); *cf. Volkswagen II*, 545 F.3d at 316-17 ("venue transfer analysis is concerned with convenience, and that a district court can deny any motions to quash does not address concerns regarding the convenience of parties and witnesses").  Because no

such speculation is necessary in NDCA, that district is clearly the better venue. *See Genentech*, 566 F.3d at 1345; *see also EON Corp. IP Holdings*, 2012 U.S. Dist. LEXIS 9545, at *11.  The availability of compulsory process favors transfer to NDCA.

### C.    "Witness Convenience" Overwhelmingly Favors Transfer.

Convenience to witnesses is commonly acknowledged as "'the single most important factor in transfer analysis.'"  *Genentech*, 566 F.3d at 1343 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). In fact, a prior case filed by EON IP in EDTX has already been transferred to NDCA primarily because EON IP could not identify any witnesses within EDTX. *See EON Corp. IP Holdings*, 2012 U.S. Dist. LEXIS 9545, at *6-17.

Here, the district court correctly applied the "100 mile rule," *see Volkswagen I*, 371 F.3d at 204-05 (finding that transfer is favored if the transferee venue is a shorter average distance from witnesses than the transferor venue where the two potential venues are more than 100 miles apart), and determined that this factor favors transfer to NDCA.  A236-239.  As the court recognized, transfer is particularly favored where a substantial number of material witnesses reside in the transferee venue but no witnesses reside within EDTX.   A32; *see Genentech*, 566 F.3d at 1345; *see also EON Corp. IP Holdings*, 2012 U.S. Dist. LEXIS 9545, at *6-17; *In re TOA*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013) (even where some party em-

ployees resided in Texas, "the potential for inconvenience to witnesses still fa-vor[ed] transfer, because none of those witnesses reside[d] within 100 miles of the Eastern District of Texas and the majority of witnesses would find the [transferee district] less inconvenient and costly to travel for trial."). The district court, how-ever, failed to give full weight to Apple's evidence in assessing this factor.

The parties identified fifteen witnesses, by name, in the NDCA, with none located in EDTX. A273-276 (D.2-D.15); A292-297 (§§ D.e, D.p, D.dd, D.ee); A305-306. All of Apple's management and any Apple employee with relevant in-formation (including the specifically identified individuals listed above) are al-ready located within NDCA. A134-135 (¶ 6, 11-14); A273-275; A305-306. Addi-tionally, four individual third-parties, including two prosecuting attorneys of the patents-in-suit, already live within NDCA. A275 (D.10-D.12); A292-297 (§§ D.e, D.p, D.dd, D.ee); A305.

As the district court nonetheless noted, because Apple identified multiple witnesses located in NDCA—and EON IP identified none in EDTX—NDCA is a far more convenient forum. *See Genentech*, 566 F.3d at 1345; *EON Corp. IP Holdings*, 2012 U.S. Dist. LEXIS 9545, at *6-17. Accordingly, the most important factor in the analysis strongly favors transfer.

### D.    No "Practical Problems" Weigh Against Transfer.

With respect to judicial economy, the district court correctly noted that while terms of the two remaining patents-in-suit have been construed in EDTX, they have also been construed in NDCA and the District of Puerto Rico.[5]  A34-35; *see also* A139 (¶ 2(b)); A160-162.  This alone would suggest that this factor is neutral and cannot weigh against transfer to NDCA.

But the lower court failed to consider that Sprint was a defendant in EON IP's NDCA case, and according to EON's infringement disclosure, Apple is accused of inducing or contributing to Sprint's infringement of the '491 Patent. A265; A288-289; *see also* A138-139 (¶ 2(a)); A148.  As a result, NDCA has had jurisdiction over at least one defendant on whose network Apple's accused products operate, and any final decision by NDCA concerning the operation of Apple products on Sprint's network will bind EON IP.  *Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d 1377, 1379 (Fed. Cir. 2013) (collateral estoppels was affirmed to prevent the plaintiff from asserting the same claims against materially indistinguishable products by different defendants).  Thus, judicial economy is better

---

[5] While EDTX has construed the terms of the '101 patent four times and the '491 patent three times, U.S. District Court Judge Jon S. Tigar of NDCA has construed the terms of the '491 patent, and U.S. District Court Judge Francisco A. Besosa of the District of Puerto Rico has construed terms of both the '101 and '491 patents. *See EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 3:12-CV-01011 (N.D. Cal.), *on appeal*, No. 14-1496 (Fed. Cir.); *EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*, No. 3:11-CV-01555 (D.P.R.).

served by transferring the case to a venue with arguably more relevant experience. Chief Judge Davis's resignation also has the practical effect of diminishing any judicial economy that might be realized by keeping the case in EDTX because another district court judge will have to be assigned, Fed. R. Civ. P. 73 (authorizing a magistrate judge to conduct a civil action only *if all parties consent*), and no other judge in EDTX has previous substantive experience with EON IP's patents.[6] Ultimately, judicial economy should weigh in favor of transfer to NDCA.

The district court concluded, however, that the possibility of consolidating this case with simultaneously filed cases in EDTX disfavored transfer. A35. This was error. "A co-pending suit in its infancy…does not increase the court's familiarity with the patents-in-suit and therefore does not implicate judicial economy." *Innovative Global Sys. LLC v. OnStar, LLC*, No. 6:10-CV-574, 2012 U.S. Dist. LEXIS 114504, at *20 (E.D. Tex. Feb. 14, 2012); *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (noting the two actions in the transferor forum were in their infancy). In failing to recognize this principle, the court relied on faulty analysis, and thereby reached an erroneous conclusion. *Auto-Dimensions LLC v. Dessault Systèmes SolidWorks Corp.*, No. 6:12-cv-01022-LED-JDL, slip op. at 15 (E.D. Tex. Oct. 9, 2013) (explaining that considerations of judicial economy should not alone outweigh other relevant factors (citing *In re EMC Corp.*, 501

---

[6] *See supra* note 3.

F. App'x at 976)).  By contrast, the related cases in the transferee district were far enough along that in the interim, summary judgment was entered on the same or substantially the same issues and theories, which judgment is now on appeal to this Court.  *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 3:12-CV-01011 (N.D. Cal.), *on appeal*, No. 14-1496 (Fed. Cir.).

The district court also determined that transfer was unwarranted because EON IP simultaneously brought other co-pending litigation in EDTX.  A33.  This determination undermines this Court's transfer jurisprudence and the patent joinder statute, 35 U.S.C. § 299.  Before Congress adopted the America Invents Act, this Court ordered transfer of cases involving multiple defendants, even when some of those defendants had no claim to the transferee district.  *See, e.g.*, *Acer Am.*, 626 F.3d at 1254 (transferring entire case, notwithstanding that petitioners Dell and Microsoft were not based in California).  Because current law prohibits joinder "based solely on allegations that [defendants] have infringed the patent or patents in suit," 35 U.S.C. § 299(b), unrelated defendants can no longer be named in a single suit.  It would make no sense, on the one hand, to interpret Section 299 to require that a patentee bring multiple separate cases in order to litigate the same patent against different defendants, while on the other hand, to hold that the presence of those related suits in the filing forum precludes transfer under 28 U.S.C. § 1404(a).  The logical course, and the only one consistent with all three relevant

statutes—35 U.S.C. § 299, 28 U.S.C. § 1404(a), and 28 U.S.C. § 1407(a)—is for district courts to render venue decisions without considering whether coordination would promote judicial economy, and to then permit litigants to avail themselves of MDL procedures when those procedures would genuinely serve judicial economy.[7]

In finding that judicial economy weighed in favor of keeping the case in EDTX, the district court also relied on the bare fact that Magistrate Love has already construed the patents-in-suit several times. A34. The court clearly erred in concluding that "significant judicial economy will be realized" from this fact. As noted above, other courts have also construed the patents-in-suit, including NDCA. Nor can this consideration be considered "significant," and certainly not enough to justify keeping the case in EDTX. To place dispositive weight on the fact that a magistrate judge has prior experience with a patent-in-suit would pervert the transfer analysis, and encourage plaintiffs to file test cases against defendants that have no chance of transfer in order to ensure that all future defendants remain in the district.

---

[7] It is of no moment that, as the magistrate remarked in a footnote, EON IP's suit against Apple was consolidated with other co-pending cases. A35 n.5. ASUS and Apple, two of the parties to these suits, have moved to transfer their cases to NDCA, where the cases can be treated jointly by a court with equal, if not greater, experience with the patents and products. Moreover, MDL procedures can achieve all the coordination necessary for these cases. *See In re EMC Corp.*, 677 F.3d at 1360; *In re EMC Corp.*, 501 F. App'x at 976 (nonprecedential) (A329-332).

Further, the district court committed critical error in concluding that any judicial-economy factors deserve greater weight than the witness-convenience and accessibility-of-proof factors.  A38 ("Here, the convenience of the witnesses favor transfer, the relative ease of access to sources of proof slightly favors transfer, practical problems disfavor transfer, while the remaining factors are neutral.  Accordingly, the Court … DENIES Apple's Motion to Transfer Venue.").  As this Court has recognized, considerations of judicial economy rarely can justify the denial of transfer, and then only in cases of very weak showings of inconvenience.  *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-46 (Fed. Cir. 2010) (denying transfer because of judicial economy); *Patent Harbor, LLC v. Twentieth Century Fox Home Entm't, LLC*, No. 6:10-CV-607, 2012 U.S. Dist. LEXIS 73149, at *14-15 (E.D. Tex. May 25, 2012) ("The Federal Circuit has made it clear that *Vistaprint* and cases like it are an exception to the general rule that 'the proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation.'") (quoting *In re Morgan Stanley*, 417 F. App'x  947, 950 (Fed. Cir. 2011)).

As discussed above, witness convenience is "'probably the single most important factor in transfer analysis.'" *Genentech*, 566 F.3d at 1343 (citing *Neil Bros*, 425 F. Supp. 2d at 329), and it, along with accessibility of proof, weigh heavily in favor of transfer.  Accordingly, even if the district court's judicial-economy find-

ings were correct—and they are not—a cumulative analysis of the factors still favors transfer to NDCA, and the district court clearly erred in concluding otherwise.

## II.    THE PUBLIC INTEREST FACTORS ALSO FAVOR TRANSFER.

### A.    The "Local Interest" Factor Favors Transfer.

In determining that "Apple's connection to NDCA and EON's connection to EDTX effectively cancel out" (A37), the district court placed inflated importance on the mere fact that EON IP has its nominal principal place of business in Tyler, Texas (where it has but a single employee), and that it purportedly holds corporate meetings and stores certain documents in EDTX. *Id.*  This was clear error.

This Court has held that an existing corporation's decision to create an LLC in a separate district than the parent company is of little significance when "'every other activity is conducted far from the chartering state.'"  *In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (per curiam) (The "[p]lace of corporate domicile in such circumstances might be entitled to little consideration under the doctrine of *forum non conveniens*, which resists formalization and looks to the realities that make for doing justice" (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 528 (1947)) (internal quotations omitted).  In *Zimmer*, for instance, this Court found that even when a patent holder had its registered office in the forum of its choice, that forum could not be deemed to have a sufficient local interest to disfavor transfer, particularly where both corporate officers were residents else-

where.  *See Zimmer*, 609 F.3d at 1381.  The patent owner's act of transporting cop-

ies of patent prosecution files to its Texas office space in anticipation of litigation

rendered the patent holder's connection to EDTX "recent, ephemeral, and an arti-

fact of litigation."  *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 97

(2010) (urging courts to ensure that the purposes of jurisdictional and venue laws

are not frustrated by a party's attempts at manipulation)); *see also Microsoft*, 630

F.3d at 1364-65 (determining that plaintiff's incorporation as an LLC in Texas

days before filing suit did not establish EDTX as a convenient place for trial).

Here, EON IP's very existence in EDTX is "ephemeral" and "an artifact of

litigation."  EON IP appears to be nothing more than a Tyler, Texas front for EON

Corporation's patent licensing and enforcement activities, designed solely to influ-

ence venue.  EON IP's registration as a business entity in Texas became effective

on Friday, September 26, 2008.  A65 (¶ 30); A130-132.  The next business day its

parent company, EON Corporation, granted EON IP a license to the '491 Patent,

and EON IP filed its first lawsuit.  A64-65 (¶¶ 19, 30); A53-54 (citing *EON Corp.*

*IP Holdings, LLC v. Sensus USA, Inc.*, No. 2:10-CV-00448); A214; A233 (¶ 5);

A236-239.  There is no doubt that EON IP opted to register in Texas for litigation

reasons, as the string of immediate lawsuits in EDTX confirms.  And, like *Zimmer*,

EON IP's primary corporate officers do not reside in EDTX.  A53-54 (citing *EON*

*Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. 2:10-CV-00448); A214; A233 (¶ 5); A236-239.

EON IP's claim that it conducts corporate meetings in EDTX cannot produce a local interest. *See  Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010) (stating, in the context of an inquiry into a corporation's principal place of business, that "if the record reveals attempts at manipulation—for example, that the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the court should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation").  According to EON IP's own admissions, it has only one (unnamed) employee in Tyler, Texas, whose duties are nowhere described, and who appears nowhere on EON IP's list of potential witnesses.  A247 (¶ 3); A291-297. Even if this employee plays a significant and relevant role within EON IP—in which case, EON IP would have violated Fed. R. Civ. P. 26(a)(1)(A)(i) by failing to disclose her or him—the existence of one employee in EDTX cannot render that forum a "nerve center" of anything.

Finally, as detailed above, because it neither makes nor sells any products, EON IP has no technical, sales, or marketing documents.  EON IP's assertion that it stores "corporate records, books, and papers" is therefore of little importance.

Like the patent holder in *Zimmer*, EON IP is simply attempting to game the venue rules.  *See Zimmer*, 609 F.3d at 1381-82.

In contrast to EON IP's tenuous connection to EDTX, Apple has a significant connection to NDCA that is relevant to this case.  A59-60; A133-135 (¶¶ 3-14).  Apple was founded in Cupertino, California, where it has been headquartered since 1976.  A133 (¶ 3).  Accordingly, the marketing, sales, research, design, and development of the accused products has been centered in NDCA. A59-60; A134-135 (¶¶ 4-7, 11-14).  And at the time it sought transfer, Apple employed approximately 13,850 people at or around those headquarters, including its management team and all Apple witnesses identified in its initial disclosures.  A59-60; A133-134 (¶¶ 3, 6).

The fact that Apple's products are sold in Texas cannot support any local interest in EDTX because, as the district court acknowledged, when—as here—accused "products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue."  A36 (citing *Nintendo*, 589 F.3d at 1198); *see also Hoffman-La Roche*, 587 F.3d at 1338 ("the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"); *In re TOA*, 543 F. App'x at 1009-10.

Apple's connection to NDCA is far more meaningful than EON IP's *de minimus* connection to EDTX.  The local interest factor therefore weighs strongly in favor of transfer, and the district court erred in concluding otherwise.

### B.    "Court Congestion" Weighs in Favor of Transfer.

As in most cases, the speed with which this case can proceed to trial, be it in EDTX or NDCA, is somewhat speculative.  A37; *see Genentech*, 566 F.3d at 1347.  Nonetheless, it is well documented that NDCA has a significantly shorter time from filing to disposition than EDTX does—only 6.4 months in the NDCA, compared to 10.1 months in the EDTX.  A58-59; A127-129; *see also* A65 (¶ 28); A125-126.  Accordingly, even if the other private and public interest factors balance each other out, this factor would tip the analysis in favor of transfer to NDCA.

Moreover, in light of Chief Judge Davis's impending retirement, court congestion in EDTX is highly likely to increase significantly in the near future.  In fact, Chief Judge Davis himself recognized that this is a pressing concern in EDTX.  In his resignation letter to President Obama, Chief Judge Davis stated,

> With my retirement in May 2015 and Judge Richard Schell's in March 2015, the Eastern District could have four of eight judgeships vacant by this time next year.  This would make it very difficult for the remaining four Eastern District judges to do the work of eight and continue to fulfill their Constitutional responsibilities to the citizens of East Texas.

A307-308.  The Chief Judge's impending retirement will only exacerbate the existing "judicial emergencies" in EDTX that the Administrative Office of the Courts has identified.[8]

In light of the fact that court congestion is a real concern in existing and future EDTX patent cases, the district court clearly erred in ignoring the EDTX's scarce resources and finding this factor to be neutral.

\*       \*       \*       \*

Ultimately, both the private and public factors in the transfer analysis overwhelmingly favor transferring this case to NDCA.  EON IP's ephemeral and litigation-driven presence in Texas cannot, and should not, overcome the convenience and fairness to the parties and witnesses in this case, or override the local interest that NDCA has in resolving this dispute.

## CONCLUSION

For the foregoing reasons, this Court should issue a writ of mandamus directing the district court to vacate the March 28, 2014 and July 21, 2014 orders and to transfer this case to the U.S. District Court for the Northern District of California.

---

[8] *See supra* n.1.  Two individuals have been nominated to serve on EDTX. *See* Office of the Press Secretary, *President Obama Nominates Four to Serve on United States District Courts*, http://www.whitehouse.gov/the-press-office/2014/06/26/president-obama-nominates-four-serve-united-states-district-courts (June 26, 2014).

July 30, 2014

Respectfully submitted,

/s/ Bryan K. Anderson
Bryan K. Anderson
SIDLEY AUSTIN LLP
1001 Page Mill Rd.
Palo Alto, California 94304
(650) 565-7000

Ryan C. Morris
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

*Attorneys for Apple Inc.*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 30th day of July, 2014, I filed the foregoing

Petition for Writ of Mandamus and Appendix with the Clerk of Court.

Two (2) copies of this Petition for Writ of Mandamus and Appendix were

served upon the following parties via U.S. Mail, postage prepaid:

Deron R. Dacus
THE DACUS FIRM, PC
821 ESE Loop 323
Suite 430
Tyler, TX 75701
903-705−1117


Daniel Scardino
John Lawrence Hendricks
Catherine Bentley Harris
Mark W. Halderman
Raymond William Mort, III
Rola Daaboul
REED & SCARDINO LLP
301 Congress Ave
Ste 1250
Austin, TX 78701
512−474−2449
Fax:  512−474−2622


Additionally, two (2) copies will be sent to the following U.S. District Judge:

The Honorable United States Chief District Judge Leonard Davis
United States District Court for the Eastern District of Texas
211 W. Ferguson, Third Floor
Tyler, TX 75702
PHONE:  (903) 590-1084
FAX:  (903) 590-1190

I further certify that the required four (4) paper copies, along with an electronic version on CD-ROM, of this Petition for Writ of Mandamus and Appendix have been delivered to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

/s/ Bryan K. Anderson
Bryan K. Anderson
SIDLEY AUSTIN LLP